1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ESTER BURNETT,                              No.  2:13-cv-1239 MCE CKD P

12                 Plaintiff,

13         v.                                    FINDINGS AND RECOMMENDATIONS

14   R. MIRANDA, et al.,

15                 Defendants.

16

17         Plaintiff is a California prisoner proceeding pro se with an action for violation of civil

18   rights under 42 U.S.C. § 1983.  He is proceeding with claims arising under the Eighth

19   Amendment against defendants Sisson,[1] Hitt,[2] Lewis, Miranda, Lee, Lankford, Simmerson,

20   Swingle and French (defendants); all current or former employees of the California Department

21   of Corrections and Rehabilitation (CDCR) at High Desert State Prison (High Desert).[3]

22   _____

23   [1]  The person identified as Lt. "Sessions" in plaintiff's complaint answered plaintiff's complaint
     as Lt. Sisson.

24

25   [2]  The person identified as Lt. "Hits" in plaintiff's complaint answered plaintiff's complaint as Lt.
     Hitt.

26

27   [3]  On August 13, 2013, the court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A.
     In the screening order, the court found that the complaint asserts cognizable claims against these
     defendants arising under the Eighth Amendment.  All other claims and defendants were
28   dismissed.

1    Defendants have filed a motion for summary judgment.  In the motion, defendants argue:  1)

2    plaintiff has failed to exhaust his administrative remedies with respect to his claims against

3    defendants Sisson, Hitt, Lewis and Simmerson; 2) that all defendants are entitled to judgment as a

4    matter of law on all of plaintiff's claims because of a failure of proof as to certain essential

5    elements of plaintiff's claims; and 3) that all defendants are immune from plaintiff's claims under

6    the "qualified immunity" doctrine.[4]

7    I.  Plaintiff's Claims

8        All of plaintiff's claims are related in some way to the denial of a "single-cell, single bed"

9    cell assignment (assignment to a cell with no cellmate and no bunk beds) while at High Desert

10   which plaintiff asserts he needed due to back pain.  Plaintiff's complaint is confusing, vague and,

11   at times, misleading.  Nevertheless, the court has, as directed by the Ninth Circuit, liberally

12   construed plaintiff's complaint, Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) while

13   keeping in mind that defendants are entitled to "fair notice" of the claims against them.  Jones v.

14   Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).

15       The court omits allegations in plaintiff's complaint which are not relevant to a viable

16   Eighth Amendment claim for either inadequate medical care or inadequate cell conditions.

17   Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation

18   of a prisoner's Eighth Amendment rights.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  An

19   individual is liable for such a violation only when the individual is deliberately indifferent to a

20   prisoner's serious medical needs.  Id.  With respect to cell conditions, the Eighth Amendment's

21   prohibition of cruel and unusual punishment imposes on prison officials, among other things, a

22   duty to "take reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan,

23   511 U.S. 825, 832 (1991) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  An

24   inmate's Eighth Amendment rights can only be violated by a prison official if that official

25   /////

26   ―――――――――――――――

27   [4]  Defendants assert objections to certain evidence submitted by plaintiff.  ECF Nos. 67-68.  The objections are discussed below only to the extent the evidence to which an objection made is material to the outcome of defendants' motion for summary judgment.

28

1   exposes an inmate to a "substantial risk of serious harm," while displaying "deliberate

2   indifference" to that risk.  Id. at 834.

3          A.  Sisson, Hitt, Lewis and Simmerson

4          Plaintiff asserts that on June 9, 2010, when he arrived at High Desert, he was met by

5   Correctional Lieutenants Hitt, Lewis, Sisson and Simmerson.  Eventually, those defendants

6   escorted plaintiff to a room with a computer.  The computer indicated that plaintiff needed

7   "single-cell, single bed housing."  Each defendant asked plaintiff "what the hell is that?"  Plaintiff

8   responded "that is the housing I need."  Defendants Hitt, Lewis, Sisson and Simmerson all said

9   "'you got to be fucking kidding' while laughing hysterically."  They then taunted plaintiff by

10  saying "do you think we are going to give you that housing here, you [are] out of your fucking

11  mind."  "We are not going to give you that housing."  "We will have medical staff say you don't

12  need it."  After that, plaintiff was placed into a holding cell.  As each defendant left, they told

13  plaintiff "good luck with trying to get that housing here because it's not going to happen."

14         B.  French

15         Plaintiff alleges that he was seen by defendant French on June 11, 2010.  On that day,

16  French told plaintiff "we are not cutting out the top bunk of a cell for you. . ."  French told

17  plaintiff she was aware of recommendations made by an outside doctor named doctor Rahimifar,

18  but plaintiff "would not [receive] such housing at [High Desert]."  Plaintiff also alleges French

19  did not send plaintiff to be evaluated by a specialist to determine if plaintiff needed "single-cell,

20  single bed" housing.

21         C.  Miranda

22         Plaintiff alleges that he saw defendant Miranda, a physician's assistant, on June 10 and

23  June 14, 2010.  On those occasions, plaintiff claims Miranda ignored the express orders of Dr.

24  Rahimifar" because "correctional staff ask[ed] him to and it would be a[n] inconvenience to order

25  correctional staff to remove the top bunk in a cell."

26  /////

27  /////

28  /////

3

1  　　　　In the body of his complaint, plaintiff also references two medical records authored by

2  defendant Miranda on July 16, 2010.  Both appear to have been generated after plaintiff visited

3  Miranda that day.  ECF No. 2 at 41-42.[5]  According to Miranda, plaintiff complained about

4  chronic neck and back pain.  Among other things, plaintiff told Miranda that he cannot sit up

5  straight while sitting on the lower bunk in his cell without hitting his head on the upper bunk.  He

6  also indicated that he had already hit is head on the upper bunk five times.  Plaintiff requested to

7  be placed in a cell by himself without bunk beds.

8  　　　　Miranda denied plaintiff's request for a cell with only one bed and revoked authorization

9  to be placed in a cell by himself based upon:  1) his own observations of plaintiff; and 2) the

10  written opinion of neurosurgeon Dr. Calvin found in plaintiff's medical filed in which Dr. Calvin

11  indicates that plaintiff could share a cell with another inmate and be housed in a cell that has a

12  "chair."

13  　　　　D.  Lankford

14  　　　　Plaintiff alleges defendant Lankford denied plaintiff "single-bed, single cell" housing on

15  July 16, 2010.

16  　　　　E.  Lee

17  　　　　Plaintiff alleges on March 17, 2011, defendant Dr. Lee removed plaintiff from the

18  Disability Placement Program.  Plaintiff alleges this denied plaintiff "single bed, single cell"

19  housing.

20  　　　　F.  Swingle

21  　　　　Plaintiff alleges that on July 22, 2010, he mailed a letter to defendant Dr. Swingle, the

22  Chief Medical Officer at High Desert.  In the letter (ECF No. 57-2 at 127-28) plaintiff asserts that

23  around July 15, 2010 he was informed by a correctional officer that he would not be assigned to

24  "single-cell, single-bed" housing as was ordered by a "doctor or neurosurgeon."  Plaintiff asserts

25  he was told somebody in "custody" was of the opinion that plaintiff's medical records indicated

26  /////

27  _____

28  [5]  The page numbers referenced are generally those assigned by the court's electronic docketing
system.

4

1   plaintiff simply needed somewhere to sit in his cell, and the stool provided in every cell in the

2   rear of the cell, and attached to a desk, would meet plaintiff's needs.

3        Plaintiff informed defendant Swingle that the stool did not meet his needs because he

4   could not comfortably watch television while sitting on the stool, he had to share the stool with a

5   cellmate, and he could only face the wall while sitting on the stool, not the cell door.

6        Finally, plaintiff informed Swingle that he had a bed sore at that moment because he had

7   been lying down too much. He would not have been lying down so much if he had a reasonable

8   place to sit where he would not be in "extreme pain."

9        Defendant Swingle responded to plaintiff's letter as follows (ECF No. 57-2 at 94):

10           Our institution was unaware of this inmates [sic] history or medical
             needs at the time of his arrival.  We have extensively researched
11           this issue and discussed it as possible with his specialty providers.
             The neurosurgeon has a noted in the UHR clarifying his position
12           that a chair in the cell is adequate and that a lower bunk should be
             adequate to accommodate his needs.
13

14       Plaintiff asserts defendant Swingle ignored the recommendations made by Dr. Rahimifar

15  that plaintiff be assigned to "single-cell, single bed" housing.  Plaintiff also takes issue with the

16  fact that Dr. Swingle never discussed plaintiff's condition with Dr. Rahimifar or Dr. Calvin.

17  Finally, plaintiff asserts Dr. Swingle should have sent plaintiff to a specialist before denying him

18  "single-cell, single bed" housing.

19  II.  Failure To Exhaust

20       Defendants argue that plaintiff has failed to exhaust administrative remedies with respect

21  to his claims against defendants Lewis, Hitt, Sisson and Simmerson.   Title 42 U.S.C. § 1997e(a)

22  provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of

23  this title, or any other federal law . . . until such administrative remedies as are available are

24  exhausted."   Administrative procedures generally are exhausted once a prisoner has received a

25  "Director's Level Decision," or third level review, with respect to his issues or claims.  Cal. Code

26  Regs. tit. 15, § 3084.7.  Administrative remedies must be "properly" exhausted, which means use

27  of all steps put forward by the agency.  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  Also, "proper

28  exhaustion demands compliance with an agency's deadlines and other critical procedural rules

                                          5

1   because no adjudicative system can function effectively without imposing some orderly structure

2   on the course of its proceedings." Id. at 90-91.  In deciding whether administrative remedies have

3   been exhausted on a motion for summary judgment, the court may decide disputed issues of fact.

4   See Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003).

5          In his complaint, plaintiff points to a grievance he filed on June 10, 2010 in which

6   plaintiff essentially makes the allegations he makes in his complaint.  ECF No. 57-2 at 101.

7   Plaintiff points to evidence indicating the grievance was screened out at the first level of review.

8   ECF No. 57-2 at 100.  The response to the grievance reads as follows:

9          [Inmate] Burnett, you submitted a green 602, a pink 602-hc and an
           ADA 1824 all with the same issues.  This appeal 602 (Green) is
10         being screened back as a duplicate.  Your original 1824 was
           referred for a first level review.
11

12         Plaintiff also points to the ADA 1824 form referenced above where he indeed makes

13   essentially the same allegations made against defendants Lewis, Hitt, Sisson and Simmerson in

14   this action and made in his grievance.  ECF No. 57-2 at 83.  On October 6, 2010, plaintiff

15   received a "Director's Level Decision" as to his ADA 1824.  ECF No. 57-2 at 77.

16         In light of the foregoing, the court finds that plaintiff exhausted all administrative

17   remedies available to him.  Plaintiff attempted to utilize the prisoner grievance process with

18   respect to his allegations against Lewis, Hitt, Sisson and Simmerson, but was told the grievance

19   would not be considered because it was duplicative of another administrative remedy sought by

20   plaintiff.  Either the actions taken by plaintiff through the ADA 1824 process served to exhaust

21   plaintiff's administrative remedies or he was barred from exhausting administrative remedies by

22   prison staff.  In any case, plaintiff did all he could do and his claims against Lewis, Hitt, Sisson

23   and Simmerson should not be dismissed for failure to exhaust administrative remedies.

24   III.  Failure of Proof

25         Summary judgment is appropriate when it is demonstrated that there "is no genuine

26   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

27   Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

28   "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

/////

7

1   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

2   amendments).

3       In resolving the summary judgment motion, the evidence of the opposing party is to be

4   believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

5   facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

6   U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

7   obligation to produce a factual predicate from which the inference may be drawn.  See Richards

8   v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

9   (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

10  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

11  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

12  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

13      A.  Sisson, Hitt, Lewis and Simmerson

14      Defendants assert Sisson, Hitt, Lewis and Simmerson should be granted summary

15  judgment because, under California law, it was not up to them to decide whether plaintiff should

16  have been given a particular housing accommodation for medical reasons when he arrived at

17  High Desert.  Rather, it was up to medical staff to recommend housing accommodations which

18  could then be provided by correctional staff.   Defendants argue that because there is no evidence

19  before the court that Sisson, Hitt or Lewis actually caused plaintiff to be denied a "single-cell,

20  single bed" housing assignment, they should all be granted summary judgment.

21      First, the court notes that, in his declaration, defendant Simmerson indicates it was he who

22  conducted the "intake, screening and processing" of plaintiff when he arrived at High Desert on

23  June 9, 2010.  ¶ 17.  Simmerson indicates that when it comes to deciding at screening whether

24  any housing accommodations should be made with respect to an inmate's medical condition, the

25  officer conducting the screening refers to the inmate's most recent CDCR Form 1845

26  "Comprehensive Accommodation Chrono."  ¶¶ 11-12.  Plaintiff's then-most-recent CDCR Form

27  1845, dated December 7, 2009, indicates that plaintiff was restricted to being housed in a lower

28  bunk and on a ground floor row of cells.  Ds' Ex. G at 12-13.  There is nothing indicating plaintiff

8

had to be placed in a cell with only one bunk or by himself.[6]  Simmerson also indicates that if a housing accommodation is to be made other than one required on the most recent CDCR Form 1845, it must be ordered by medical staff as part of medical screening conducted at intake.  ¶ 14.  Defendants present documents which appear to constitute a report drafted after plaintiff's medical screening occurring on June 9, 2010.  Ds' Ex. F.  The report indicates that plaintiff's most recent CDCR 1845 is the one dated December 7, 2009 and nothing in the documents suggests that plaintiff should be housed in a cell with only one bunk, and nothing over the bunk.[7]

Defendants provide a report drafted by defendant Simmerson pursuant to his intake screening of plaintiff conducted on June 9, 2010.  Ds' Ex. E.  In the report, Simmerson indicates that based upon his screening, plaintiff was authorized to be in a cell by himself, on a lower tier and in a lower bunk.  Ds' Ex. E at 2.

There are two problems with defendants' argument concerning defendant Simmerson.  First, plaintiff alleges that the computer indicated to Simmerson that plaintiff required "single-bed, single cell" housing, which creates a genuine issue of material fact as to whether there was medical necessity to house plaintiff on a single bed, or on a lower bunk of a bunk bed in a cell, by himself.[8]  Second, according to the very regulations provided by defendants, Simmerson was obligated to review plaintiff's most recent CDCR-128G form at screening to determine if plaintiff was entitled to single cell housing.  ECF No. 31-1 at 11.  While defendants do not provide plaintiff's then-most-recent CDCR-128G, plaintiff does, and it is dated April 15, 2010.  ECF No. 57-2 at 183.  In that document, it is indicated as follows:

> The [Pleasant Valley State Prison] Chief Physician and Surgeon (CPS) was consulted regarding the temporary single cell status of BURNETT.  [Institutional Classification Committee] was advised that BURNETT was seen by a Neuro Surgeon who recommended

---

[6]  On previous CDCR 1845 forms which were completed on February 5, 2009 and May 11, 2009, it is indicated that plaintiff requires a single bed in his cell with nothing over the bed.  Id. at 9-11.

[7]  It appears this report was drafted by medical professionals not identified in plaintiff's complaint as defendants or otherwise.

[8]  Again, as indicated above, the evidence presented by the party opposing summary judgment must generally be believed.

9

> that BURNETT continue with single cell housing with no over head
> bunk due to a complication with his neck and lower back. . .  The
> single cell with no overhead bunk is temporary as BURNETT heals
> from a prior surgery and shall be evaluated in the future by a neuro
> surgeon.

Furthermore a follow-up CDCR 128G was drafted on July 15, 2010, after plaintiff arrived

at High Desert.  It was noted in that document that:

> [P]er CDCR 128G dated 4/15/10, [the committee] recommended
> BURNETT continue with Single Cell housing with no over head
> bunk due to complications with his neck an[d] lower back (due to a
> prior surgery).

ECF No.57-2 at 191.

In light of the foregoing, the court finds there is at least a genuine issue of material fact as

to whether the appropriate medical personnel had either authorized or recommended that plaintiff

be assigned "single-cell, single-bed" housing when plaintiff arrived at High Desert on June 9,

2010, and whether defendant Simmerson was aware that medical personnel had either authorized

or recommended that plaintiff be assigned "single-cell, single-bed" housing.  For these reasons,

defendants' motion for summary judgment should be denied with respect to plaintiff's claim

against defendant Simmerson.

    B.  <u>French</u>

As indicated above, plaintiff claims defendant French failed to follow a housing

recommendation made by an outside physician, Dr. Rahimifar.  A progress report based upon

dictation by Dr. Rahimifar indicates that he met with plaintiff on April 1, 2010 for neck and lower

back pain:

> The patient comes in complaining of continued neck pain radiating
> down both arms and low back pain radiating down both legs.  He
> states that [it] has increased over the course of the last couple of
> weeks.  He complains of inability to sleep due to both neck and
> back pain.

ECF No. 57-2 at 7-8.

After the examination, Dr. Rahimifar, with respect to housing, recommended that plaintiff

be housed in a cell by himself and in a lower bunk.

/////

When Nurse Practitioner French met with plaintiff, however, plaintiff was already assigned to a lower bunk, and cell where he was housed alone, having been so assigned the prior day by defendant Simmerson.  Therefore, plaintiff has no claim concerning defendant French's failure to follow a recommendation by Dr. Rahimifar.  To the extent plaintiff asserts other defendants failed to follow Dr. Rahimifar's recommendation prior to the time plaintiff's single cell status was revoked by defendant Miranda on July 16, 2010 (see below), those assertions will not be addressed further.

With respect to plaintiff's assertion that French should have sent plaintiff to a specialist to determine if plaintiff should have been housed in "single-cell, single bed" housing, plaintiff fails to point to evidence suggesting this amounted to a violation of plaintiff's Eighth Amendment rights concerning medical care.  Nothing suggests Nurse Practitioner French's failure to refer plaintiff to a specialist amounts to deliberate indifference as plaintiff fails to show that French was not capable of evaluating plaintiff's need for "single-cell, single bed" housing on her own, that referral to plaintiff's primary care physician was insufficient, or that plaintiff's use of normal prison procedure for requesting a medical accommodation would be insufficient.

For all of these reasons, defendants' motion for summary judgment as to plaintiff's remaining claim against defendant French should be granted.

C.  Miranda

With respect to the allegations regarding Miranda's actions on July 16, 2010, the court finds there is at least a genuine issue of material fact as to whether Miranda was deliberately indifferent to a substantial risk of serious harm by denying plaintiff housing in a cell with no bunk beds.  As indicated above, evidence before the court (ECF No. 53-2 at 12) indicates that plaintiff told Miranda of his difficulties with sitting on a bunk with another bunk on top of it including the fact that he had already hit his head on the upper bunk five times.  While there is evidence from plaintiff's medical file and other evidence submitted by defendants that plaintiff did not really need to be housed in a cell with only one bunk, plaintiff's clear explanation of his problem to defendant Miranda and her failing to order that plaintiff be housed in a cell without bunk beds despite her apparent authority to make such an order at least creates an issue of fact to be decided

11

1    by a finder of fact.

2           As indicated above, Miranda appears to rely on the opinion of Dr. Calvin that plaintiff did

3    not need to be housed in a cell without bunk beds, he simply needed a chair.  From all the

4    evidence before the court, however, an appropriate inference could be made that defendant

5    Miranda was aware that plaintiff's trouble with being assigned to a lower bunk bed was not only

6    the fact that he could not sit in the bed comfortably, but it was difficult for him to get in and out

7    of the lower bunk.  Furthermore, there is no evidence that plaintiff had a chair in his cell on July

8    17, 2010, or that Miranda ever caused plaintiff to have a chair.[9]

9           For the reasons stated above, the court will recommend that defendant Miranda be granted

10   summary judgment with respect to any claim against him except the claim that he violated

11   plaintiff's Eighth Amendment rights on July 16, 2010 when he denied plaintiff housing in a cell

12   without bunk beds.

13          D.  Lankford

14          As for plaintiff's allegation that defendant Dr. Lankford denied plaintiff "single-bed,

15   single cell" housing on July 16, 2010, plaintiff fails to point to any evidence supporting this.[10]  In

16   his declaration, ECF No. 38, Lankford indicates he provided treatment to plaintiff after he had

17   been involved in an altercation with another inmate; nothing in the declaration concerns a

18   determination regarding housing made on July 16, 2010.  Accordingly, the court will recommend

19   that defendant Lankford be granted summary judgment.

20   /////

21   /////

22   _____

[9]  In her affidavit, defendant Dr. Swingle indicated plaintiff was given a chair.  ECF No. 45 at 4,
23   ¶ 8.  However, Dr. Swingle fails to point to any evidence in support of this or indicate how she
     knows that plaintiff was given a chair.  It does appear that there was a small, built-in metal desk
24   and connected metal stool in the back of plaintiff's cell as there is in all or most cells at High
     Desert.  See e.g. ECF No. 57-2 at 152.  Absent further clarification from Dr. Calvin, a small metal
25   stool permanently located in the rear of a cell and attached to a desk is not the same as a chair
     especially for someone with back problems.
26

27   [10]  Defendant Lankford is not identified anywhere in the report authored by defendant Miranda on
     July 16, 2010 where Miranda terminated plaintiff's "single cell" status.
28

1        E. <u>Lee</u>

2            Plaintiff alleges defendant Lee removed plaintiff from the Disability Placement Program

3    on March 17, 2011 which removed plaintiff from "single-cell, single bed" housing.  However, as

4    already discussed, plaintiff had been removed from single cell housing on July 16, 2010 by

5    defendant Miranda and plaintiff had never been authorized for "single bed" housing while at High

6    Desert.  Thus, it is not clear what effect, if any, any action taken by defendant Lee on March 17,

7    2011 had on plaintiff's housing assignment.  To the extent plaintiff alleges Lee should have given

8    plaintiff a "single-cell, single bed" assignment on March 17, 2011, plaintiff fails to point to

9    anything reviewed by Lee demonstrating as much.  Most importantly, plaintiff fails to indicate

10   that he spoke with defendant Lee about his condition on or around March 17, 2011 or that Lee

11   conducted an examination of plaintiff.  Furthermore, the document signed by Lee on March 17,

12   2011 appears to have been signed by Lee in her capacity as a "Health Care Manager" and not a

13   treating physician.  <u>See</u> ECF No. 57-2 at 23; ECF No. 39.[11]

14           For these reasons, defendants' motion for summary judgment should be granted with

15   respect to plaintiff's remaining claim against defendant Lee.

16       F. <u>Swingle</u>

17           Finally, with respect to plaintiff's claim against defendant Swingle arising out of the letter

18   he wrote to her, as Chief Medical Officer, Swingle is not obligated to research, address or even

19   review every issue raised by an inmate in correspondence given that inmates have primary care

20   providers and more than one grievance procedure.  In any case, the response Swingle gave to

21   plaintiff did not amount to deliberate indifference to plaintiff's medical condition or his

22   conditions of confinement.  First, the court reiterates there is no evidence Dr. Rahimifar ever

23   recommended that plaintiff be housed in a cell without bunk beds.  Rather, he recommended that

24   plaintiff be given a bottom bunk which, at all times relevant in this case, he was.  Furthermore,

25   plaintiff complained that the stool provided in his cell was inadequate for him to watch television

26   _____

     [11]  In her declaration, defendant Lee indicates that the recommendations made in the March 17,
27   2011 Disability Placement Program Verification form were made by defendant Miranda whom
     Lee indicates was plaintiff's "primary care provider."  However, Miranda's signature does not
28   appear to be on the form.

1    or to just leisurely sit and watch the comings and goings outside his cell.  But, plaintiff has no

2    right to watch television while in prison and conditions of confinement which amount to

3    "[r]outine discomfort inherent in the prison setting" are not an adequate basis for an Eighth

4    Amendment violation.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).[12]

5            For these reasons, the court will recommend that defendants' motion for summary

6    judgment be granted with respect to plaintiff's remaining claims against defendant Swingle.

7    IV.  Qualified Immunity

8            Defendants assert they are immune from plaintiff's remaining claims under the "qualified

9    immunity" doctrine.  Government officials performing discretionary functions generally are

10   shielded from liability for civil damages insofar as their conduct does not violate clearly

11   established statutory or constitutional rights of which a reasonable person would have known.

12   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

13           As indicated above, there is a failure of proof with respect to most of plaintiff's claims.  In

14   those instances, defendants are entitled to qualified immunity because there are not facts which

15   can show a violation of Constitutional rights.

16           With respect to plaintiff's remaining claim against defendant Simmerson, defendants

17   assert Simmerson acted appropriately:  "[u]pon Burnett's arrival, he was referred for medical

18   clearance, which was conducted, and he was housed according to the requirements for his safety

19   and security."  However, defendants' ignore plaintiff's  assertion that Simmerson was made

20   aware via computer that plaintiff required "single-bed, single-cell" housing and that plaintiff's

21

22   [12]  To be clear, plaintiff's claim against defendant Miranda is distinguished from plaintiff's claim
     against defendant Swingle in the following respects.  First, Miranda was directly responsible for
23   plaintiff's medical care as one of plaintiff's primary care providers during the relevant period of
     time, ECF No. 42 at ¶  3, while Swingle was essentially an administrator.  Furthermore, the report
24   drafted by Miranda on July 16, 2010, (ECF No. 53-2 at 12) makes clear that he was aware of
     plaintiff's specific complaints about the pain from which he was suffering, the ways in which his
25   cell was causing him discomfort, including that he did not have anywhere he could sit in his cell
     where he would not be in pain, and that he injured himself getting in and out of his bunk.  In his
26   letter to defendant Swingle, plaintiff essentially complains that his stool is not ideal for watching
     television or for sitting and monitoring the outside of his cell.  Finally, in his letter to Swingle
27   plaintiff does not claim that sitting on the stool causes him pain or that getting in and out of his
     bunk does.
28

                                                   14

then-most-recent 128G form, which, under California law, Simmerson was required to review at screening, also recommended that housing assignment.  Therefore, defendants have not met their burden of demonstrating that defendant Simmerson is entitled to immunity under the "qualified immunity" doctrine.

With respect to plaintiff's claim against defendant Miranda arising out of the report drafted by him on July 16, 2010, plaintiff has a clearly established right to have correctional staff not be deliberately indifferent to plaintiff's exposure to substantial risk of serious harm.  Farmer, 511 U.S. 834.  There are genuine issues of material fact as to whether Miranda violated the aspect of the Eighth Amendment specifically addressed in Farmer.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for Summary Judgment (ECF No. 48) be:

1. Denied with respect to plaintiff's claim that defendant Miranda violated plaintiff's Eighth Amendment rights on July 16, 2010 when he denied plaintiff housing in cell without bunk beds.

2. Denied with respect to plaintiff's claim that defendant Simmerson violated plaintiff's Eighth Amendment rights on June 9, 2010 when Simmerson failed to house plaintiff in a cell without bunk beds.

3. Granted in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections, no longer than 15 pages, with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within

/////

/////

/////

1  the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

2  F.2d 1153 (9th Cir. 1991).

3  Dated:  March 5, 2015

4  _____
   CAROLYN K. DELANEY
5  UNITED STATES MAGISTRATE JUDGE

1
burn1239.57(3)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28